

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID NOVOSELSKY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 11 CV 3702 ) ) Hon. Charles R. Norgle |
| DOROTHY BROWN, et al., | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff David Novoselsky ("Plaintiff") sues Defendants Dorothy Brown, the Clerk of the Circuit Court of Cook County, Illinois in her individual capacity ("Brown"), and Cook County, Illinois (the "County") (collectively, "Defendants"), alleging that Brown retaliated against him for exercising his First Amendment right to bring lawsuits against her office, the Office of the Clerk of the Circuit Court of Cook County (the "Clerk's Office"). Additionally, Plaintiff sues Defendants for defamation under Illinois state law. Before the Court is Defendants' motion for summary judgment. For the following reasons, the motion is denied.

**I. BACKGROUND**

Plaintiff's claims for defamation and retaliation are based upon four separate incidents. First, on June 14, 2010, Brown filed a thirty-seven page complaint against Plaintiff with the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), accusing him of, *inter alia*, filing frivolous lawsuits[1] against her which were motivated by racial animus. Brown also issued a press release in conjunction with this ARDC complaint.

---

[1] It is undisputed that, prior to the instant lawsuit, Plaintiff filed numerous lawsuits in state court against Brown in her official capacity, containing a multitude of allegations against the Clerk's Office.

1

Second, in May of 2011, Brown communicated directly with one of Plaintiff's clients, Reverend Jessie Jackson ("Rev. Jackson"). Defendants filed an affidavit from Rev. Jackson wherein he states "I do not recall ever retaining attorney David Novoselsky to represent me or the rainbow PUSH Coalition in any capacity." Defs.' LR 56.1 Statement of Uncontested Material Facts in Support of Their Mot. for Summ. J. Ex. 3 ¶ 9. However, it is undisputed that Novoselsky filed a lawsuit on behalf of Rev. Jackson as plaintiff, and against Brown as defendant, on May 19, 2011. See Jackson v. Brown, 2011-L-050579 (Cir. Ct. Cook Cnty. Ill. Law Div., filed May 19, 2011). Brown told Rev. Jackson that the lawsuit, which Plaintiff had filed against her on Rev. Jackson's behalf, was meritless and an attempt to turn public trust against her based on her race. Rev. Jackson thereafter withdrew from the lawsuit, and appeared on a television broadcast, along with Brown, to announce his decision to "modify" the lawsuit.

Third, on June 7, 2011, Brown sent a letter to the Better Government Association ("BGA") regarding Plaintiff, wherein she made similar allegations against Plaintiff as those contained in her complaint to the ARDC.

Fourth, on November 2, 2011, Brown published a letter about Plaintiff—with the aid and assistance of the County and its attorneys—to the President of the Cook County Board and its Commissioners. In the letter, Brown asks the Cook County Board to join her in her request to have the Office of the Independent Inspector General investigate the identity of the County employee who turned over internal memoranda to Plaintiff for use in one of his lawsuits against Brown. The underlying lawsuit at issue in Brown's letter to the Cook County Board was one wherein Plaintiff accused Brown of placing County funds in various high risk banks with low ratings. Lastly, Plaintiff alleges that the County is liable for ratifying the conduct of Brown as described above. Defendants now move for summary judgment on all claims.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." Bunn v. Khoury Enters., Inc., 753 F.3d 676, 681 (7th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. at 681-82 (quoting Anderson, 477 U.S. at 248). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013).

As an initial matter, Defendants argue that Plaintiff committed various procedural errors in responding to their motion for summary judgment, and that Plaintiff failed to respond to Defendants' immunity arguments. Although Plaintiff's procedural failings and silence as to certain arguments do not do him any favors, it is well established that "even an unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor." Hotel 71 Mezz Lender, LLC v. Nat'l Ret. Fund, No. 14-2034, 2015 WL 499571, at *5 (7th Cir. Feb. 6, 2015) (citing Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994)). Indeed, to succeed on a motion for summary judgment, "[t]he party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor." Id.

3

## B. Absolute Immunity

Defendants argue that they are entitled to summary judgment because they are absolutely immune from liability, or, at least, that they are entitled to qualified immunity from Plaintiff's claims. In the event that the Court finds that Defendants are not immune from liability, Defendants argue that, nevertheless, they are entitled to judgment as a matter of law on Plaintiff's defamation and First Amendment retaliation claims.

### 1. *Whether Brown is Entitled to Immunity for ARDC Complaint Pursuant to Illinois Supreme Court Rule 775*

First, Defendants argue that Brown is entitled to absolute immunity. With respect to the ARDC complaint, Defendants argue that Brown is immune from liability pursuant to Illinois Supreme Court Rule 775. Rule 775 provides:

> Any person who . . . communicates a complaint concerning an attorney . . . to the Attorney Registration and Disciplinary Commission, or its administrators, staff, investigators or any member of its boards, shall be immune from all civil liability which, except for this rule, might result from such communications or complaint. The grant of immunity provided by this rule shall apply only to those communications made by such persons to the Attorney Registration and Disciplinary Commission, its administrators, staff, investigators and members of its boards.

Ill. S. Ct. R. 775. Brown's ARDC complaint against Plaintiff and her related press release however, were not communicated solely "to the Attorney Registration and Disciplinary Commission, its administrators, staff, investigators and members of its boards." Id. Because Brown issued a press release to the general public and the media regarding her ARDC complaint against Plaintiff, the Court finds that she is not immune from liability under Rule 775.

4

## 2. Whether Brown is Entitled to Immunity for the Rev. Jackson Communications and ARDC Complaint As Privileged Communications Made by a Party During a Judicial Proceeding

Next, Defendants argue that Brown is immune from liability for the ARDC complaint and the Rev. Jackson communications because such communications are absolutely privileged as communications made by a party during a legal proceeding. In Illinois, "[a] party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another . . . during the course and as part of, a judicial proceeding in which [s]he participates, if the matter has some relation to the proceeding." Malevitis v. Friedman, 753 N.E.2d 404, 406-07 (Ill. App. Ct. 2001) (internal quotation marks and citation omitted). A party "is not liable for those statements that have any bearing on the subject at issue regardless of [her] motive or the unreasonableness of [her] conduct." Id. at 407. A party, however, "may not introduce into a judicial proceeding inflammatory matters entirely unrelated to the litigation." Id.

As to the Rev. Jackson communications, to the extent that the communications were unrelated to the lawsuit Rev. Jackson filed against Brown in her official capacity as Clerk of the Circuit Court of Cook County, they are not privileged. Brown's personal history with Plaintiff regarding other legal matters covering a variety of issues, and her personal belief that Plaintiff was "engaging in a pattern of behavior designed to turn public trust against the first African-American Clerk of the Circuit Court of Cook County and to attempt to cause her to lose an election to that and other posts" is not related to the lawsuit filed by Rev. Jackson against Brown regarding the misuse of funds for the peer jury system. Second Am. Compl. Ex. C. Therefore, those statements are not privileged.

As to the ARDC complaint, the privilege does not extend to the communications made to third parties outside of the judicial or quasi-judicial proceedings—namely, the media. See

Lykowski v. Bergman, 700 N.E.2d 1064, 1072 (Ill. App. Ct. 1998) ("In this case the public did not have a right to review [Brown's] charges with the ARDC because, contrary to [Brown's] central premise, such charges are private and confidential until the ARDC determines to act upon them in the form of a formal complaint. . . . [Brown] was not privileged to forward copies of his ARDC letter to third parties." (internal quotation marks and citations omitted)). Because Brown communicated her complaint and a summary thereof in a press release, those communications are not protected by the litigation privilege.

### 3. Whether Brown is Entitled to Absolute Immunity for All Claims As Speech Related to her Official Duties

Defendants also argue that Brown is entitled to absolute immunity for all four of the alleged defamatory and retaliatory communications because the statements were made in relation to, and in execution of, her official duties as the Clerk of the Circuit Court of Cook County. In Illinois, "even if a statement is defamatory," government officials "have immunity for their statements made within the scope of their authority." Klug v. Chi. Sch. Reform Bd. of Trs., 197 F.3d 853, 861 (7th Cir. 1999) (citing Blair v. Walker, 349 N.E.2d 385, 387-89 (Ill. 1976)). "[T]he reason for the privilege is so that 'officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect to acts done in the course of those duties.'" Id. (quoting Barr v. Matteo, 360 U.S. 564, 574 (1959)). "Immunity is not overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice." Id.

In order to determine whether the speech was made within the scope of Brown's official duties, "'the inquiry is a practical one' and should focus on 'the duties an employee actually is expected to perform.'" Morales v. Jones, 494 F.3d 590, 596 (7th Cir. 2007) (quoting Garcetti v. Ceballos, 547 U.S. 410, 424-25 (2006)). Defendants, however, fail to establish any facts as to what Brown's official duties included. Defendants provide explanations as to why Brown sent

6

the various communications, but they merely conclude, without supporting facts, that the communications were sent within the scope of her official duties. That the communications were produced during business hours at the Clerk's Office does not mean, by extension, that they were drafted as part of Brown's official duties.

Additionally, Defendants' argument that the communications were made in an official capacity is undermined by the personal nature of the comments, particularly those made in relation to elections for which Brown, as an individual, was on the ballot. See Second Am. Compl. Ex. A, at p. 12; 12-29 (stating in her ARDC complaint that "[a]fter a long period of success with this media tactic, Novoselsky . . . could just tell the media that he had filed a new lawsuit and they would still report the story, especially of it was right before an election for which Clerk Brown was on the ballot" and noting the timing of Plaintiff's previous lawsuits against Brown in relation to the elections in which she was participating, such as her various re-election campaigns for the Clerk's Office, her 2007 bid for Mayor of Chicago, and her 2010 bid for Cook County Board President); Second Am. Compl. Ex. B, at p. 3 (stating in her ARDC complaint press release that "there appears to be a pattern of his filing legal actions for the purposes of garnering media attention around election time"); Second Am. Compl. Ex. C (stating in her communication to Rev. Jackson that Plaintiff "is engaging in a pattern of behavior designed to turn the public trust against the first African-American Clerk of the Circuit Court of Cook County and to attempt to cause her to lose an election to that and other posts based entirely on lies."); Second Am. Compl. Ex. E, at pp. 10-31 (noting in her letter to the BGA the timing of Plaintiff's previous lawsuits against Brown in relation to the elections in which she was participating, such as her various re-election campaigns for the Clerk's Office, her 2007 bid for Mayor of Chicago, and her 2010 bid for Cook County Board President). Brown's electoral

campaigns for Mayor of the City of Chicago, Cook County Board President, and re-election to the Clerk's Office are certainly not part of her official duties as Clerk. Her name on the ballot appears only as Dorothy Brown, and not "Clerk Brown."

In sum, the facts before the Court fail to establish as a matter of law, that Defendants are entitled to absolute immunity. Accordingly, Defendants' motion for summary judgment on the basis of absolute immunity is denied.

**C. Qualified Immunity**

Second, Defendants argue that Brown is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citations omitted). "Once a public official has raised a defense of qualified immunity, the plaintiff must establish two things in order to defeat the defense: first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." Mordi v. Zeigler, 770 F.3d 1161, 1163-64 (7th Cir. 2014).

As to the first requirement, Plaintiff has alleged two violations of his protected rights based on Defendants' four communications—defamation and First Amendment retaliation. "The

8

court cannot resolve disputed issues of fact when it addresses the first question because ordinary rules governing summary judgment apply in that situation." Id. at 1164. Thus, a genuine issue of material fact as to whether Defendants violated Plaintiff's substantive rights will defeat Defendants' qualified immunity defense at this stage in the litigation. For reasons discussed more fully below, genuine issues of material fact remain as to whether Defendants violated Plaintiff's substantive rights.

### *1. Defamation*

In order to establish a claim for defamation, Plaintiff must show: (1) that Defendants made a false statement about him; (2) that Defendants made an unprivileged publication to a third party; and (3) that the publication of the false statement damaged Plaintiff. Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 698 (7th Cir. 2006). "Illinois law recognizes a per se cause of action for defamation when the defamatory statements are so serious that reputational injury may be presumed. Defamation per se claims include falsely imputing an inability to perform or want of integrity in the duties of office, employment, or profession." Id. Additionally, if Plaintiff is found to be a public figure, he "may hold a speaker liable for the damage to reputation cause by the publication of defamatory statements only if he establishes actual malice." Madison v. Frazier, 539 F.3d 646, 657 (7th Cir. 2008) (citations omitted).

As the Court previously found in its denial of Plaintiff's motion for partial summary judgment, almost all of the material facts with respect to Plaintiff's defamation claims remain in dispute. For example, Defendants argue that Plaintiff is a public figure, and thus, he must establish actual malice. However, Defendants' only evidence in support of this alleged fact is a decision of an Illinois state court judge who, in a completely separate proceeding, found that Plaintiff was a limited purpose public figure. That non-binding authority is insufficient to

support Defendants' claim that Plaintiff is a public figure in regard to the events in this case. In addition, the parties submit competing facts as to whether Defendants' statements constituted mere opinion and whether the communications were substantially true, both of which could be defenses to defamation. Accordingly, because genuine issues of material fact exist as to whether Plaintiff established a claim for defamation, Defendants' motion for summary judgment on Plaintiff's defamation claims based on the defense of qualified immunity is denied. See Mordi, 770 F.3d at 1164.

### 2. *First Amendment Retaliation*

"To prevail on his First Amendment retaliation claim, [Plaintiff] must show that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action.'" Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). If Plaintiff can establish his prima facie case, the burden then shifts to Defendants "to show that the harm would have occurred anyway—that is, even if there hadn't been a violation of the First Amendment—and thus that the violation had not been a 'but for' cause of the harm for which he is seeking redress." Greene v. Doruff, 660 F.3d 975, 977 (7th Cir. 2011).

Once again, the parties dispute the material facts that make up Plaintiff's retaliation claim. In both Plaintiff's motion for summary judgment and in response to the instant motion, Plaintiff presents facts that he engaged in First Amendment activity when he filed lawsuits against Brown, that he suffered a deprivation by losing clients due to Brown's communications to the various agencies and to the media, and that Brown sent the communications as a direct reaction to the lawsuits that he had filed against her. On the other hand, Defendants present facts

10

that show that Plaintiff did not engage in protected activity when he filed his lawsuits because they were frivolous and without merit, and that Plaintiff did not suffer a deprivation likely to deter his activity because he filed additional lawsuits against Brown. Therefore, because material facts are disputed as to whether Plaintiff established a claim for First Amendment retaliation, Defendants' motion for summary judgment on Plaintiff's retaliation claims based on the defense of qualified immunity is denied. See Mordi, 770 F.3d at 1164.

**D. Genuine Issues of Material Fact**

Finally, Defendants argue that, even if they are not entitled to absolute or qualified immunity, they are still entitled to judgment as a matter of law on Plaintiff's claims based on the undisputed facts. As discussed extensively above however, the facts are not undisputed. Indeed, genuine issues of material fact remain as to Plaintiff's defamation and First Amendment retaliation claims. Accordingly, summary judgment is improper and Defendant's motion is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 2, 2015

11